# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

# IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Cr. ID. No. 1003000386 |
| | ) | |
| | ) | |
| JAMES MATOS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Submitted: December 10, 2014
Decided: February 19, 2015

## COMMISSIONER'S REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF SHOULD BE DENIED AND COUNSEL'S MOTION TO WITHDRAW SHOULD BE GRANTED.

Renee L. Hrivnak, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State.

Patrick J. Collins and Albert J. Roop, V, Esquire, 8 East 13th Street, Wilmington, Delaware, 19801, Attorney for Defendant James Matos.

PARKER, Commissioner

This 19th day of February, 2015, upon consideration of Defendant's Motion for Postconviction Relief and Defendant's Rule 61 Counsel's Motion to Withdraw, it appears to the Court that:

**BACKGROUND AND PROCEDURAL HISTORY**

1.      On March 1, 2010, Defendant James Matos was arrested and thereafter indicted on charges of Arson First Degree, Burglary Second Degree, Reckless Endangering First Degree, Cruelty to Animals, Harassment, and three counts of Breach of Bond Conditions.

2.      The Superior Court jury trial commenced on November 3, 2010.  At the November 5, 2010 prayer conference, the trial judge reduced the arson charge from first-degree arson to second–degree arson, because the parties (and the judge) agreed that Defendant could not be charged with first-degree arson based on the statutory definition of the term "building."[1]

3.      Following the trial, on November 9, 2010, the jury found Defendant guilty of the following offenses:  second-degree arson, first-degree reckless endangering, first degree criminal trespass (a lesser-included offense of second degree burglary), cruelty to animals, three counts of breach of bond conditions and harassment.

4.      Defendant Matos was declared a habitual offender, pursuant to 11 *Del. C.* § 4214(a), for each of his felony convictions.

5.       On January 28, 2011, Defendant was sentenced as follows:

*        15 years at Level V for arson second degree;

*        5 years at Level V for reckless endangering first degree;

*        2 years at Level V for each of the three convictions of breach of bond conditions;

---

[1] November 5, 2010 Trial Transcript, pg. 2.

\*      1 year at Level V, suspended for 1 year at Level III probation, for criminal trespass;

\*      1 year at Level V, suspended for 1 year at Level III probation for harassment; and

\*      1 year at Level V, suspended after 6 months, for 6 months at Level III probation for animal cruelty.

6.      Defendant filed a direct appeal to the Delaware Supreme Court. On July 13, 2011, the Delaware Supreme Court affirmed the conviction and sentence of the Superior Court.[2]

**FACTS**

7.      The charges at issue stem from the following facts as set forth by the Delaware Supreme Court in its opinion on Defendant's direct appeal.[3]

8.      In September 2009, Defendant Matos began living with Joy Breen, her two children, and the family dog at Breen's apartment, located at 47 Norway Avenue in Wilmington, Delaware.  At the time, the 47 Norway Avenue building was approximately 100 years old.  Over the years, it had been converted into an apartment building that contained three apartment units, one on each floor.  Breen's apartment was located on the first floor.[4]

9.      About a year and a half after Matos moved in with Breen, they had a falling out, and Breen asked Matos to move elsewhere.  Matos moved to his sister's house for the

---

[2] *Matos v. State,* 2011 WL 2732575 (Del.).
[3] *Matos v. State,* 2011 WL 2732575, at \* 1 (Del.).
[4] *Id.*

2

next few days, but then returned to Breen's apartment the following weekend, where he spent Sunday night, February 28, 2010.[5]

10.     The next day, March 1, 2010, Matos left Breen's apartment in the early morning without explanation. Immediately thereafter, Breen asked her landlord to have the locks on her apartment changed. After asking her landlord to do that, Breen then left her apartment to go to work. Her two children left to go to school, in accordance with their daily routine. The family dog remained in the apartment in a dog crate.[6]

11.     At about 9:00 a.m. that same day, Matos returned and let himself into Breen's apartment. Aware of the dog's presence in the crate, Matos went into Breen's bedroom and, using his lighter, set Breen's bedding on fire. He then stood there watching the flames grow before leaving the building. The fire and smoke destroyed Breen's apartment and killed the family dog.[7]

12.     Shortly after 9:00 a.m., Harold Howell, who lived on the third floor, noticed smoke coming into his apartment. Howell went downstairs to investigate, and saw smoke coming out of the rear of Breen's apartment. Howell immediately called the fire department and the building's owner and reported that the building was on fire. Although the fire department responded quickly, Breen's apartment had already been destroyed by the excessive heat and smoke damage. The second and third floor apartments also suffered fire-related damage.[8]

---

[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*

3

13. The evidence in this case was overwhelming against Defendant. A witness observed him enter the residence shortly before the fire and exit shortly afterwards.[9] Defendant told his sister, Anita, that he tossed a lighter on the bed.[10] Defendant's lighter was found at the point of origin in the open position.[11] Defendant sent a letter to the victim from prison which laid out in detail exactly how he committed the crimes. The "confession" letter was admitted into evidence.[12]

## RULE 61 MOTION AND COUNSEL'S MOTION TO WITHDRAW

14. On March 5, 2012, Defendant filed a *pro se* motion for postconviction relief along with a supporting memorandum of law alleging ineffective assistance of counsel against trial and appellate counsel.[13] Defendant's motion for the appointment of counsel was denied.[14] Before making a recommendation, the record was enlarged and Defendant's trial counsel and appellate counsel were each directed to submit an Affidavit responding to Defendant's ineffective assistance of counsel claims. Trial counsel filed his Affidavit on April 25, 2012[15], and appellate counsel filed her Affidavit on April 26, 2012[16].

15. Defendant Matos then filed a motion to amend his Rule 61 claims.[17] The court granted Defendant's motion to amend.[18] Appellate counsel filed a supplemental Affidavit responding to Defendant's amended motion on June 8, 2012.[19] In turn, the

---

[9] November 3, 2010 Trial Transcript, at pgs. 35-40.
[10] November 4, 2010 Trial Transcript, at pgs. 147-148.
[11] November 4, 2010 Trial Transcript, at pgs. 26-29, 61-63.
[12] See, Superior Court Docket No. 48, Exhibit A to Affidavit of Defense Counsel in Response to Rule 61 Motion
[13] Superior Court Docket Nos. 37 and 38.
[14] See, Superior Court Docket Nos. 41, 45, & 46.
[15] Superior Court Docket No. 48.
[16] Superior Court Docket No. 51.
[17] Superior Court Docket No. 54.
[18] Superior Court Docket No. 55.
[19] Superior Court Docket Nos. 57, 58.

State was also directed to, and did, file a response to Defendant's motion as supplemented.[20] Defendant filed his final response on September 4, 2012.[21]

16.     On January 23, 2013, the Commissioner issued a Report and Recommendation recommending denial of Defendant's Rule 61 Motion (the "Commissioner's Report").[22] In recommending denial, the Commissioner took into consideration all of the arguments raised in Defendant's Rule 61 motion, the Affidavits of trial and appellate counsel, the State's response and Defendant's reply thereto. The Commissioner's Recommendation fully, thoroughly and exhaustively addressed each of Defendant's claims and ultimately concluded that all of Defendant's claims lacked merit, and the motion should be denied.[23]

17.     Defendant Matos appealed the Commissioner's Report.[24]

18.     On July 26, 2013, upon consideration of the Rule 61 Motion, the Commissioner's Report, Defendant's appeal, and a review of the record, the Superior Court entered an order adopting the Commissioner's Report and denying Defendant's Rule 61 Motion (the "Denial Order").[25]

19.     Defendant Matos appealed the Superior Court's Denial Order to the Delaware Supreme Court.[26] By Order dated December 5, 2013, the Delaware Supreme Court remanded this matter to the Superior Court for the appointment of counsel.[27]

20.     On March 25, 2014, counsel was appointed.

21.     On August 24, 2014, assigned counsel filed a Motion to Withdraw as Postconviction Counsel pursuant to Superior Court Criminal Rule 61(e)(2).

---

[20] Superior Court Docket No. 63.
[21] Superior Court Docket No. 64.
[22] Superior Court Docket No. 68.
[23] Superior Court Docket No. 68.
[24] Superior Court Docket No. 73.
[25] Superior Court Docket No. 75.
[26] Superior Court Docket No. 76.
[27] *Matos v. State,* 2013 WL 6459056 (Del.).

5

22.     Superior Court Criminal Rule 61(e)(2) provides that:

> If counsel considers the movant's claim to be so lacking in merit that counsel cannot ethically advocate it, and counsel is not aware of any other substantial ground for relief available to the movant, counsel may move to withdraw. The motion shall explain the factual and legal basis for counsel's opinion and shall give notice that the movant may file a response to the motion within 30 days of service of the motion upon the movant.

23.     In the motion to withdraw, Defendant's Rule 61 counsel represented that, after undertaking a thorough analysis of the Defendant's claims, counsel has determined that the claims are so lacking in merit that counsel cannot ethically advocate any of them.[28] Counsel further represented that, following a thorough review of the record, counsel was not aware of any other substantial claim for relief available to Defendant Matos.[29] Defendant's Rule 61 counsel represented to the court that there are no potential meritorious grounds on which to base a Rule 61 motion and has therefore sought to withdraw as counsel.[30]

24.     Defendant's Rule 61 counsel advised Defendant of their motion to withdraw and advised Defendant that he had the right to file a response thereto within 30 days, if Defendant desired to do so.[31]  Defendant filed a response to counsel's motion to withdraw on September 5, 2014, raising one claim in opposition thereto.[32]

25.      In order to evaluate Defendant's Rule 61 motion, and to determine whether Defendant's Rule 61 counsel's motion to withdraw should be granted, the court should be satisfied that Rule 61 counsel made a conscientious examination of the record and the law

---

[28] See, Superior Court Docket No. 90- Defendant's Rule 61 counsel's Motion to Withdraw with Supporting Memorandum of Law.
[29] *Id.*
[30] *Id.*
[31] See, Superior Court Docket No. 89.
[32] Superior Court Docket No. 93- Defendant's Response to Counsel's Motion to Withdraw.

6

for claims that could arguably support Defendant's Rule 61 motion.  In addition, the court should conduct its own review of the record in order to determine whether Defendant's Rule 61 motion is devoid of any, at least, arguable postconviction claims.[33]

**DEFENDANT'S RULE 61 MOTION IS WITHOUT MERIT**

26.     The court finds that Defendant's claims lack merit for all of the reasons set forth in the Commissioner's Report and Denial Order.[34]  The Commissioner did a thorough job in assessing the Rule 61 Motion, the arguments made in the Rule 61 Motion, and the record of the case.  On July 26, 2013, the Superior Court entered an order adopting the Commissioner's Report and denying Defendant's Rule 61 motion after consideration of the Rule 61 Motion, the Commissioner's Report, Defendant's appeal, and a review of the record.[35]

27.     The court continues to hold that Defendant's Rule 61 Motion is denied for the reasons set forth in the Commissioner's Report of January 23, 2013 and the Superior Court's Denial Order of July 26, 2013.  The court adopts by reference the factual determinations and legal conclusions set forth in the Commissioner's Report and Denial Order.

28.     Defendant, in response to counsel's motion to withdraw, raises one claim in opposition thereto.[36] Defendant continues to contend that as a result of his trial counsel's ineffective assistance the charge from Arson First Degree was permitted to be reduced to Arson Second Degree in violation of his constitutional rights.[37]

---

[33] See, for example,  *Roth v. State of Delaware,* 2013 WL 5918509,  at \*1 (Del. 2013)(discussing standard to be employed when deciding counsel's motion to withdraw on a defendant's direct appeal).
[34] Superior Court Docket No. 68.
[35] Superior Court Docket No. 75.
[36] See, Superior Court Docket No. 93.
[37] *Id.*

7

29. This claim, like all the others, has previously been raised, fully considered, and found to be without merit in the Commissioner's Report and, thereafter, the Denial Order. This claim, like all the others, is without merit for the reasons set forth in the Commissioner's Report and Denial Order, which are incorporated herein by reference.

30. Briefly, at the prayer conference, Defendant's trial counsel requested that the charge of Arson First Degree should be reduced to the lesser included offense of Arson Second Degree. Defendant's trial counsel was successful in convincing the State and the trial court that he was, in fact, correct in his position that the charge should be reduced.

31. The court granted Defendant's trial counsel's request and agreed to amend the charge from arson first degree to arson second degree. The court ruled that after carefully looking at the charge and dissecting its elements, the State, Defendant's counsel, and the court, all ultimately agreed that Defendant could not, as a matter of law, be charged with arson first degree based on the statutory definition of the term "building."[38]

32. The court's decision to downgrade the charge from arson first degree to arson second degree was proper. Superior Court Criminal Rule 7(e) allows a charge to be amended at any time prior to verdict "if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." Under the circumstances of this case, the defendant had adequate notice of the underlying facts of the charge, there were no new elements of the offense added, the amendment was a less serious lesser-included offense of the original charge, and no additional or different offense was being charged.[39]

---

[38] November 5, 2010 Trial Transcript, pg. 2.

[39] See, *State v. Hester,* 2012 WL 5364690, at *4 (Del.Super.)(charge reduced from burglary first degree to the lesser included charge of burglary second degree was proper when amendment was a less serious lesser-included offense of the original charge.); *Rogers v. State,* 2003 WL 22957024, at *2 (Del.)(amendment of indictment to charge defendant with a less serious lesser-included offense of the original charge was properly permitted).

8

33. As the Delaware Supreme Court made clear in *Gates v. State,*[40] Delaware law is quite specific. Pursuant to 11 *Del. C.* § 206 (c), a lesser included offense should be charged where there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting him of the included offense.[41]

34. In the subject case, the court determined that Defendant Matos should be acquitted of the offense charged, as a matter of law, and only charged with the lesser included offense. The change from Arson First Degree to the lesser-included charge of Arson Second Degree did not substantially change the material elements of the crime. The subject case presents the type of scenario which 11 *Del. C.* § 206 (c) addresses.

35. A change which increases the penalty and adds material elements, such as an increase of the charge from Arson Second Degree to Arson First Degree, would not be permitted by way of amendment. But here, the amendment from Arson First Degree to the lesser included Arson Second Degree benefitted Defendant. This amendment reduced Defendant's exposure (as a habitual offender) on the Arson charge from a Class C felony, with the possibility of mandatory life, to a Class D felony, without the possibility of mandatory life. The court's decision to amend the charge from Arson First Degree to the lesser included charge of Arson Second Degree was not improper, and Defendant's counsel request that the court do so was not deficient in any respect.

36. Defendant still faced the charge of Burglary Second Degree which also carried the possibility of mandatory life. Defendant's trial counsel was also successful in convincing the jury that Defendant should not be found guilty of Burglary Second Degree. Instead, the jury convicted Defendant of the lesser included offense of Criminal

---

[40] *Gates v. State,* 424 A.2d 18, 21 (Del. 1980).
[41] *Gates v. State,* 424 A.2d 18, 21 (Del. 1980); 11 *Del. C.* § 206 (c); Superior Court Criminal Rule 31(c).

Trespass. Consequently, defense counsel was successful in eliminating Defendant's exposure to a mandatory life sentence under Arson First Degree and Burglary Second Degree.

37. In order to prevail on an ineffective assistance of counsel claim, Defendant must meet the two-pronged *Strickland* test by showing that: (1) counsel performed at a level "below an objective standard of reasonableness" and that, (2) the deficient performance prejudiced the defense.[42] The first prong requires the defendant to show by a preponderance of the evidence that defense counsel was not reasonably competent, while the second prong requires him to show that there is a reasonable probability that, but for defense counsel's unprofessional errors, the outcome of the proceedings would have been different.[43]

38. Mere allegations of ineffectiveness will not suffice; instead, a defendant must make and substantiate concrete allegations of actual prejudice.[44] There is a strong presumption that counsel's conduct fell within a wide range of reasonable professional assistance.[45]

39. Defendant's claims that his counsel provided ineffective assistance are undermined by the record and fail to satisfy *Strickland.* The downgrade in the arson charge from first degree to second degree was not improper. The conduct of defense counsel does not appear to be deficient in any respect nor has Defendant shown any actual prejudice allegedly as a result thereof.

---

[42] *Strickland v. Washington,* 466 U.S. 668, 687-88, 694 (1984).
[43] *Id.*
[44] *Younger v. State*, 580 A.2d 552, 556 (Del. 1990).
[45] *Albury v. State,* 551 A.2d 53, 59 (Del. 1988); *Salih v. State,* 2008 WL 4762323, at *1 (Del. 2008).

40.     The court has reviewed the record carefully and has concluded that Defendant's Rule 61 motion is without merit and devoid of any other substantial claims for relief. The court is also satisfied that Defendant's Rule 61 counsel made a conscientious effort to examine the record and the law and has properly determined that Defendant does not have a meritorious claim to be raised in his Rule 61 motion.

For all of the foregoing reasons, Defendant's Motion for Postconviction Relief should be denied and Defendant's counsel's motion to withdraw should be granted.


**IT IS SO RECOMMENDED.**


_____/s/_____
Commissioner Lynne M. Parker


oc:  Prothonotary
cc:  Nicole M. Walker, Esquire
      Dade D. Werb, Esquire
      Mr. James Matos

11